**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

DAVID L. JOHNSON, AIS 134016,   :

  Plaintiff,       :

vs.          :  CA 11-0228-CG-C

PENTON ASHWORTH, et al.,    :

  Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the first amended complaint (Doc. 111), the motion to dismiss filed by the ADOC defendants, Penton Ashworth, James Pate and Roger Marsh (Doc. 119), the motion to dismiss filed by defendant Kevin Dunn (Doc. 131),[1] and plaintiff's responses in opposition (Docs. 142 & 143). Upon

---

[1] Concurrent with the filing of the motion to dismiss, defendant Dunn also filed a motion to strike (Doc. 133). In moving to strike paragraphs 28(a-c), 29, 38, and 59(e-f) of plaintiff's amended complaint, Dunn argues that the referenced allegations of plaintiff's amended complaint "are an attempt to insert immaterial, impertinent, or scandalous matters" and should, therefore, be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (Doc. 133, at 1.) Dunn further expounds upon this argument by arguing that plaintiff is trying to establish his "proclivity for violence" and that the cited evidence would be inadmissible under numerous rules of evidence. (*See id*. at 2.)

Rule 12(f)(2) of the Federal Rules of Civil Procedure provides, in relevant part, as follows: "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter. The court may act . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id*. It is clear, however, that since a motion to strike is a "drastic remedy" it should be "'resorted to only when required for the purposes of justice . . . [and] should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *Stephens v. Trust for Public Land*, 479 F.Supp.2d 1341, 1346 (N.D. Ga. 2007) (quoting *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)), *reconsideration denied by*, 2007 WL 3046510 (N.D. Ga. Oct. 17, 2007). In addition, "motions to strike are rarely granted absent a showing of prejudice." *Id*. (citation omitted).

(Continued)

consideration of the foregoing pleadings, and all other relevant pleadings in the Court's file, the Magistrate Judge recommends that the Court **DENY** the motions to dismiss in their entirety.

## FINDINGS OF FACT

On December 31, 2010, David L. Johnson was incarcerated at Holman Correctional Facility in Atmore, Alabama under the custody and control of the Alabama Department of Corrections ("ADOC"). (Doc. 111, ¶ 5.) At approximately 11:30 a.m., defendant Kevin Dunn removed plaintiff from his normal cell block; Dunn informed Johnson that because his blood sugar was high he needed to report to the shift office to see defendant Penton Ashworth. (*Id*. at ¶ 14.)[2] Upon arriving in the hallway outside the shift office, Ashworth informed Johnson that "he was being moved to a one-man holding cell on death row[,] . . . [an] 8' x 10' [cell] that is used to isolate and punish inmates." (*Id*. at ¶ 16.) Plaintiff immediately requested that he be allowed "to sign a medical refusal form so that he could remain in his normal cell block." (*Id*. at ¶ 17.) Ashworth informed Johnson that he did not have the right to sign a medical refusal

---

Rather than making a showing of prejudice that he would sustain by virtue of inclusion of the objectionable statements in the court file or harm that will befall him unless those allegations are stricken, *see Chambers, infra,* 535 F.Supp.2d at 1263, Dunn merely lists the reasons why such evidence would be inadmissible during an evidentiary hearing or trial of this cause. (*See* Doc. 133.) As this Court has previously indicated, it is improper for a party to attempt to extract anticipatory evidentiary rulings from this Court at the Rule 12(b) stage. *Chambers v. Cooney,* 535 F.Supp.2d 1255, 1262 (S.D. Ala. 2008). Moreover, as was the case in *Chambers,* the undersigned "declines to impose the drastic, disfavored remedy of striking the challenged allegations pursuant to Rule 12(f)[]" where no evidence of prejudice has been presented. *Id*. at 1263. Accordingly, Dunn's motion to strike (Doc. 133), is due to be **DENIED**, subject to the moving party's right to challenge the admissibility of such evidence at the appropriate juncture. *See id.*

[2]   A licensed physician was not on duty at Holman on December 31, 2010. (*Id*. at ¶ 15.)

form and, thereafter, both corrections' officers "became aggressive and suggested that [they] would physically move Plaintiff to the holding cell." (*Id*.)

> Without warning, provocation, or any physical threats made by Plaintiff, Ashworth sprayed Plaintiff in the face with a chemical agent called Sabre Red. After being initially sprayed with Sabre Red, Plaintiff backed up against a wall in the hallway and found a small wooden stool. Plaintiff picked up the stool to shield his face from the Sabre Red. Plaintiff did not threaten or attempt to hit Defendants with the wooden stool. Ashworth then sprayed Plaintiff a second time with Sabre Red, causing Plaintiff to drop the wooden stool.

(*Id*. at ¶ 18.) Plaintiff avers that defendant Ashworth used the chemical agent Sabre Red to harass, provoke and torment him and, further, that this defendant violated several ADOC regulations by "repeatedly spraying" him with the chemical agent. (*Id*. at ¶ 19.)

Plaintiff was incapacitated after twice being sprayed with Sabre Red and thereupon the defendants tackled him and pinned him to the ground in such a manner that his chest was facing the ground and his hands were behind his back. (*Id*. at ¶ 20.) Plaintiff offered no resistance and after the defendants handcuffed plaintiff and while he was still on the ground, defendant Dunn kicked and punched plaintiff in the face causing severe injuries. (*Id*. at ¶ 21.)[3] Johnson initially was transported to North Baldwin Infirmary in Bay Minette, Alabama and then to Mobile Infirmary in Mobile, Alabama for treatment of his injuries. (*Id*. at ¶ 23.) Plaintiff sustained severe and permanent injuries to his left eye; his vision in that eye has been severely diminished and he needs corrective surgery. (*Id*. at ¶ 24.)

---

[3]     Plaintiff avers that the defendants violated the Department's "Use of Force" regulation number 327 (as well as the Chemical Agents regulation number 312) and, further, that the defendants violated his constitutional rights by exceeding the amount of force justified under the circumstances, using excessive force, using force to punish him, and using force when he was not offering any resistance. (*See id*. at ¶ 22.)

The defendants intentionally attempted to cover-up what happened to Johnson on December 31, 2010 "by fabricating a story that [his] injuries arose from a brachial stun technique and/or from [him] hitting his face on the ground when he was tackled." (*Id*. at ¶ 25.) In collaborating to conceal the actual events, the defendants falsified statements and other documents. (*Id*.) However, beginning on January 5, 2011, the Intelligence and Investigation Division ("I&I") of the ADOC began investigating the assault and ultimately determined that Dunn used excessive force. (*Id*. at ¶ 26.) As a result of the assault and attempted cover-up, Dunn, Mummert, and Bell were either fired or forced to resign by the ADOC. (*Id*. at ¶ 27.)

Johnson has made the following specific allegations against Dunn:

Dunn has a lengthy history of violent behavior, having been in numerous fights prior to December 31, 2010, including:

a.   Prior to working at Holman Correctional Facility, Dunn worked at Fountain Correctional Facility and was involved in a fight with an African-American correctional officer. The fight was caused as a result of Dunn using racial slurs;

b.   Before December 31, 2010, while Dunn was working at Holman Correctional Facility, Dunn was involved in a "cell extraction" and hit an African-American inmate in the head with his fist while the inmate was on the ground. Sergeant Penton Ashworth witnessed the incident. Lieutenant Michael English warned Dunn to not strike inmates in the head.

c.   Dunn was further involved in a physical altercation while working for the City of Atmore's police department which caused the City of Atmore to force Dunn to resign.

Prior to and while working at Holman Correctional Facility, Dunn had a reputation for violent behavior, particular[ly]  towards African-American inmates, and Defendants knew or should have known of Dunn's propensity to physically harm inmates.

(*Id*. at ¶¶ 28-29.)

Based upon the foregoing facts, Johnson asserts six causes of action against the defendants in his amended complaint (Doc. 111, at 6-12), as follows:

<u>**COUNT I**</u>

<u>**(EXCESSIVE FORCE)**</u>

.     .     .

31.     Defendants, acting under the color of state law, violated Plaintiff's rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments by using force maliciously and sadistically to cause harm. Defendant Ashworth sprayed Plaintiff twice with Sabre Red without warning, provocation, or reason. Defendant Dunn kicked and punched Plaintiff in the head, while Plaintiff was handcuffed on the ground.

32.     As  a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered injury, pain, and emotional distress in that his face was bruised and swollen, his skin was treated for excessive exposure to Sabre Red, and his left eye suffered subconjunctival hemorrhaging, acute iritis, decreased vision and nuclear sclerotic cataract change.

33.     Defendants knowingly, willfully, and recklessly disregarded Plaintiff's constitutional rights.

WHEREFORE, Plaintiff prays [for] judgment against Defendants for compensatory and punitive damages in an amount to be determined by the Court, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and for other and further relief as the Court deems proper.

<u>**COUNT II**</u>

<u>**(FAILURE TO INTERVENE AND DELIBERATE INDIFFERENCE)**</u>

.     .     .

35.     Defendants Ashworth, Bell, Marsh, Mummert and Pate were present for and witnessed the excessive force applied to Plaintiff, yet they failed to take steps to protect Plaintiff. Defendants Ashworth, Bell, Marsh, Mummert and Pate did nothing to discourage the excessive force, even though they had a realistic opportunity to do so.

36.     Defendants failed to report the incident in violation of ADOC's regulations.

37.     Defendants had a duty to intervene when Ashworth and Dunn began using excessive force. Defendants consciously chose not to intervene or take any reasonable steps to protect Plaintiff and, as such, they are liable for nonfeasance.

38.     By allowing Dunn, who had a known proclivity toward violence, to kick and punch Plaintiff while he was restrained and on the ground, Defendants Ashworth, Bell, Marsh, Mummert and Pate were deliberately indifferent to the resulting substantial risk of physical and emotional injury to Plaintiff. This deliberate indifference directly and proximately caused violation of Plaintiff's Eighth and Fourteenth Amendment rights.

39.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered injury, pain, and emotional distress in that his face was bruised and swollen, his skin was treated for excessive exposure to Sabre Red, and his left eye suffered subconjunctival hemorrhaging, acute iritis, decreased vision and nuclear sclerotic cataract change.

WHEREFORE, Plaintiff prays [for] judgment against Defendants for compensatory and punitive damages in an amount to be determined by the Court, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and for other and further relief as the Court deems proper.

## COUNT III

## (ASSAULT AND BATTERY)

.      .      .

41.     Defendant[s] assaulted Plaintiff by intentionally and unlawfully kicking and punching him while Plaintiff was restrained on the ground. Defendants further sprayed Plaintiff with a chemical agent without justification.

42.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered injury, pain, and emotional distress in that his face was bruised and swollen, his skin was treated for excessive exposure to Sabre Red, and his left eye suffered subconjunctival hemorrhaging, acute iritis, decreased vision and nuclear sclerotic cataract change.

WHEREFORE, Plaintiff prays [for] judgment against Defendants for compensatory and punitive damages in an amount to be determined by the Court, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and for other and further relief as the Court deems proper.

## COUNT IV

## (NEGLIGENT FAILURE TO FOLLOW ADOC PROCEDURE)

.        .        .

44.     Defendants owed Plaintiff a duty to follow the ADOC's regulations, including regulation no. 32[7] (Use of Force) ad no. 312 (Chemical Agents), as well as training methods and procedures.

45.     Defendants were trained and instructed on the proper use of force and proper use of chemical agents prior to the incident on December 31, 2010.

46.     Defendants breached their duties by violating the ADOC's regulations and by acting contrary to their training methods and procedures.

47.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered injury, pain, and emotional distress in that his face was bruised and swollen, his skin was treated for excessive exposure to Sabre Red, and his left eye suffered subconjunctival hemorrhaging, acute iritis, decreased vision and nuclear sclerotic cataract change.

WHEREFORE, Plaintiff prays [for] judgment against Defendants for compensatory and punitive damages in an amount to be determined by the Court, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and for other and further relief as the Court deems proper.

## COUNT V

## (NEGLIGENT RETENTION AND SUPERVISION)

.        .        .

49.     At all material times, Ashworth was Dunn's immediate supervisor and English was Ashworth's immediate supervisor.

50.     Ashworth and English owed a duty to Plaintiff to properly supervise Dunn.

51.     Ashworth and English breached these duties by failing to properly train and instruct Dunn on the appropriate methods and procedures when interacting with inmates.

52.     Ashworth and English acted willfully, maliciously, fraudulently, in bad faith, or under a mistaken interpretation of the law in failing to adequately train, supervise, and report Dunn's past violent acts to their superiors.

53.     Although they had knowledge of Dunn's habit for violent and unprovoked attacks on inmates, Ashworth and English willfully and

wantonly failed to report or recommend to their superiors that Dunn's employment be terminated.

54.     Furthermore, Ashworth and English's willful and wanton failure to supervise, monitor, and report Dunn for past acts of violence, as well as their failure to recommend that Dunn['s] employment be terminated, constituted a failure to discharge their duties pursuant to standard operating procedure, rules, and regulations, and constituted a breach of the duty owed to the Plaintiff.

55.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered injury, pain, and emotional distress in that his face was bruised and swollen, his skin was treated for excessive exposure to Sabre Red, and his left eye suffered subconjunctival hemorrhaging, acute iritis, decreased vision and nuclear sclerotic cataract change, as well as mental pain and distress.

WHEREFORE, Plaintiff prays [for] judgment against Defendants Ashworth and English for compensatory and punitive damages in an amount to be determined by the Court, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and for other and further relief as the Court deems proper.

## COUNT VI

## (WILLFUL AND WANTON MISCONDUCT)

.          .          .

57.     Plaintiff alleges that Defendants acted with actual malice toward the Plaintiff and with willful or wanton indifference to and with deliberate disregard for human life and the rights of the Plaintiff.

58.     At all times material, Defendants had a duty to refrain from causing injury to the Plaintiff through willful or wanton misconduct.

59.     In breach of their duty to refrain [from] causing injury to the Plaintiff through their willful or wanton misconduct, Defendants are guilty of one or more of the following willful or wanton acts or omissions to act:

      (a)          willfully and wantonly using force that exceeded what was justified under the circumstances, although Defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff;

      (b)          willfully and wantonly applying excessive force to Plaintiff that was unreasonable and unnecessary,

although Defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff;

(c)       willfully and wantonly continuing physical abuse against the Plaintiff while the Plaintiff begged Defendants to quit hitting him during the incident, although Defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff;

(d)       willfully and wantonly failing to prevent Dunn from kicking and punching Plaintiff, although Defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff;

(e)       willfully and wantonly failing to monitor, supervise, and report Dunn's past acts [of] violence towards inmates pursuant to standard procedure, rules and regulations, although defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff; and

(f)       willfully and wantonly failing to report or recommend to their superiors that Dunn's employment be terminated, although they had knowledge of Dunn's past violent acts, and knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to Plaintiff.

60.    As a direct and proximate result of one or more of Defendants' wrongful acts or omissions to act, Plaintiff suffered severe and permanent physical injuries and mental pain and distress.

WHEREFORE, Plaintiff prays [for] judgment against Defendants for compensatory and punitive damages in an amount to be determined by the Court, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and for other and further relief as the Court deems proper.

(Doc. 111, at ¶¶ 31-33, 35-39, 41-42, 44-47, 49-55 & 57-60.)

## CONCLUSIONS OF LAW

A.    **Motion to Dismiss Standard**.  Pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis

that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in Twombly, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*., quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is

not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. at 680, 129 S.Ct. at 1950-1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. United States Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

B.     **Capacity**. The first ground for the motions to dismiss revolves around plaintiff's failure to specifically set forth in his amended complaint whether he was suing the defendants in their individual capacities, in their official capacities, or both. (*Compare, e.g.*, Doc. 119, at 1-2 *and* Doc. 131, at 1 *with* Doc. 111, at 2-3 (plaintiff lists the defendants, noting that at all relevant times each was a correctional officer employed by the ADOC at Holman Correctional Facility in Atmore, Alabama  and, further, that each

was acting within the line and scope of his employment when plaintiff was injured).)
During the August 22, 2012 hearing before the undersigned (*see, e.g.*, Doc. 137), counsel
for plaintiff made clear that plaintiff intended, through the amended complaint, to sue
the defendants solely in their individual capacities and reiterates that position in
plaintiff's responses in opposition to the motions to dismiss (*compare* Doc. 142, at 1 ("As
an initial matter, Plaintiff seeks to impose liability against the ADOC Defendants in
their individual capacity only.") *with* Doc. 143, at 2 ("Plaintiff has sued Dunn in his
individual capacity only, and absolute immunity does not apply.")).

As explained by the Supreme Court in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct.
3099, 87 L.Ed.2d 114 (1985), "[p]ersonal-capacity suits seek to impose personal liability
upon a government official for actions he takes under color of state law[,]" while
official-capacity suits "generally represent only another way of pleading an action
against an entity of which an officer is an agent." *Id*. at 165, 105 S.Ct. at 3105 (quotation
marks and citations omitted).

> As long as the government entity receives notice and an opportunity to
> respond, an official-capacity suit is, in all respects other than name, to be
> treated as a suit against the entity. It is *not* a suit against the official
> personally, for the real party in interest is the entity. Thus, while an award
> of damages against an official in his personal capacity can be executed
> only against the official's personal assets, a plaintiff seeking to recover on
> a damages judgment in an official-capacity suit must look to the
> government entity itself.
>
> On the merits, to establish *personal* liability in a § 1983 action, it is
> enough to show that the official, acting under color of state law, caused
> the deprivation of a federal right. More is required in an official-capacity
> action, however, for a governmental entity is liable under § 1983 only
> when the entity itself is a moving force behind the deprivation . . .; thus, in
> an official-capacity suit the entity's policy or custom must have played a
> part in the violation of federal law. When it comes to defenses to liability,
> an official in a personal-capacity action may, depending on his position,
> be able to assert personal immunity defenses, such as objectively
> reasonable reliance on existing law. In an official-capacity action, these
> defenses are unavailable. The only immunities that can be claimed in an
> official-capacity action are forms of sovereign immunity that the entity,

> *qua* entity, may possess, such as the Eleventh Amendment. While not
> exhaustive, this list illustrates the basic distinction between personal- and
> official-capacity actions.

*Id*. at 166-167, 105 S.Ct. at 3105-3106 (emphasis in original; internal quotation marks and

citations omitted).

Because of this distinction, "'[i]t is obviously preferable for the plaintiff to be

specific in the first instance'" whether he is suing defendants in their individual or

official capacities, or both, in order to avoid any ambiguity. *Adams v. Franklin,* 111

F.Supp.2d 1255, 1261-1262 (M.D. Ala. 2000), quoting *Hafer v. Melo,* 502 U.S. 21, 24 n.*,

112 S.Ct. 358, 116 L.Ed.2d 301 (1991). However, where, as here, "a complaint does not

identify 'in which capacity the defendants are sued, the course of proceedings typically

indicates the nature of the liability sought to be imposed.'" *Id*. at 1262, quoting *Jackson v.*

*Georgia Dept. of Transp.,* 16 F.3d 1573, 1575 (11th Cir. 1994).

Obviously, the proceedings in this case have indicated the liability sought to be

imposed, plaintiff's counsel specifically making clear during the hearing on August 22,

2012 and in his responses to the motions to dismiss that the defendants were being sued

in their individual capacities only. To erase all ambiguity, however, plaintiff is extended

leave of this Court to amend his complaint no later than **September 24, 2012** to reflect

that all of the defendants are sued solely in their individual capacities,[4] inasmuch as

justice so requires since the defendants will not prejudiced by such formulaic changes.

*Compare* Fed.R.Civ.P. 15(a)(2) ("[A] party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely give leave

---

[4]      In addition, plaintiff should also correct defendant English's name to reflect his
true first name (James as opposed to Michael). No other changes are authorized or should be
made in the second amended complaint. The defendants are expected to answer the second
amended complaint not later than **October 15, 2012**.

when justice so requires.") *with Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir.) ("'[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'"), *cert. dismissed*, 528 U.S. 948, 120 S.Ct. 370, 145 L.Ed.2d 287 (1999); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("While a decision whether to grant leave to amend is clearly within the discretion of the district court, a justifying reason must be apparent for denial of a motion to amend."); and *Larney v. Croft*, 2006 WL 3833887, *4 (M.D. Ga. Dec. 29, 2006) ("[T]he Court directs Plaintiffs, when they recast their Complaint as they are ordered to do in the conclusion of this Order, to specify the capacity in which Gaskins is sued.").

In light of such allowance, it is clear that to the extent the defendants claim their motions to dismiss should be granted based on the defenses of sovereign immunity and Eleventh Circuit immunity (*see* Doc. 119, at 1-2 & 7-8; Doc. 131, at 1-6), the motions to dismiss are due to be **DENIED** since those defenses to liability are not available in personal/individual-capacity actions, like the present one. *See Kentucky v. Graham*, 473 U.S. at 166-167, 105 S.Ct. at 3105-3106 ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. . . . The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").

C.    <u>The Defense of Qualified Immunity as it Relates to Plaintiff's Claims of Excessive Force and Failure to Intervene</u>.  The ADOC defendants, in particular, contend that they are entitled to qualified immunity, it being undisputed that they were acting within the line and scope of their authority and it being their contention that they did not violate any clearly established rights of the plaintiff. (Doc. 119, at 2.) "This  is especially true in light of the Defendant Ashworth's argument and supporting case law

14

concerning the accepted use of pepper spray, and for all of the ADOC Defendants in light of the argument and case law concerning prior knowledge and reasonable opportunity to intervene." (*Id*.)

It is certainly clear that some thirty years ago in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818, 102 S.Ct. at 2738. Moreover, some three years later the Supreme Court reiterated in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 526, 105 S.Ct. at 2815, citing *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738. Because the undersigned finds that plaintiff's amended complaint states claims of violations of clearly established law, none of the moving parties are entitled to dismissal of Johnson's constitutional claims of excessive force and failure to intervene.

**Excessive Force**. In his motion to dismiss, defendant Dunn adopted and incorporated the ADOC defendants' motion to dismiss (Doc. 131, at ¶ 1); however, because those defendants nowhere make the argument that plaintiff's allegations regarding Dunn's actions in kicking and hitting him in the face does not state a claim of excessive force in violation of clearly established law (*see* Doc. 119, at 3-6), it was unjustified for Dunn to contend that "Plaintiff has failed to state a claim upon which relief may be granted." (Doc. 131, at ¶ 2.) The undersigned offers no more ink to this statement beyond simply noting that plaintiff clearly has stated a claim against Dunn for excessive force in violation of the Eighth and Fourteenth Amendments to the United

15

States Constitution. To the extent Dunn's motion to dismiss is truly directed to plaintiff's excessive force claim (*see* Doc. 131), it is **DENIED**.

Turning to the excessive force claim asserted against defendant Penton Ashworth, the ADOC defendants contend that plaintiff has not stated a prima facie case of excessive force since "[t]he use of pepper spray is not excessive force per se." (Doc. 119, at 3.)[5] It is, of course, clear that "[u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Skrtich v. Thornton,* 280 F.3d 1295, 1300 (11th Cir. 2002) (internal quotation marks and citations omitted).

> To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. From consideration of such factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the

---

[5]     Although the ADOC defendants are correct that the Eleventh Circuit in *Vinyard v. Wilson,* 311 F.3d 1340 (2002), in the Fourth Amendment context of an arrest, stated that "[c]ourts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to a hospital[,]" the defendants neglect to point out that the Eleventh Circuit has also stated that "[c]ourts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." *Id.* at 1348. Thus, while the line of cases the ADOC defendants cite to in their motion to dismiss, arising in the Fourth Amendment context of an arrest, are somewhat helpful, they ultimately do not answer the question of whether plaintiff has alleged an Eighth Amendment excessive force constitutional violation, *see* 311 F.3d at 1349 n.15 ("[W]e do not discuss the use of pepper spray in a prison setting because the Eighth Amendment controls such cases[.] . . . [T]he Eighth Amendment standard necessarily involves a more culpable and subjective mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction."). As explained *infra,* just because the Eighth Amendment requires a more culpable and subjective mental state does not mean that it cannot be met (pleading wise) in the context of the use of pepper spray.

unjustified infliction of harm as is tantamount to a knowing willingness that it occur.

*Id.* at 1300-1301 (internal quotations marks and citations omitted).

Taking plaintiff's allegations and considering them in the light most favorable to Johnson, the undersigned recommends that the Court find that those allegations make out a violation of his Eighth Amendment rights at the hands of Ashworth.[6] In sum, those allegations (*see* Doc. 111, at ¶¶ 17-20 & 31-32) establish that there was no need for the application of force because Johnson did not refuse to obey a direct order to move to a one-man holding cell but, instead, simply requested the ability to sign a medical refusal form so he could remain in his normal cell block. Certainly, there is nothing to suggest that Ashworth perceived any threat from plaintiff at this point in time since the amended complaint alleges that Johnson made no physical threats (Doc. 111, at ¶ 18). Instead of simply countering Johnson's request with a clear and unequivocal direct order to move to a one-man cell because his blood sugar was high, Ashworth sprayed plaintiff with the chemical agent Sabre Red and, after plaintiff backed up against a wall in the hall and picked up a wooden stool to shield his face,[7] Ashworth again sprayed the plaintiff with the chemical agent causing him to drop the stool. Finally, as plaintiff makes clear, the "[d]efendants" used "force maliciously and sadistically to cause harm. Defendant Ashworth sprayed Plaintiff twice with Sabre Red without warning, provocation, or reason." (Doc. 111, at § 31.) The foregoing allegations lead the undersigned to conclude at this stage in the proceedings, as the Eleventh Circuit did in

---

[6]    The undersigned does not mean to make any suggestion that the decision reached herein is the same decision that will be reached, for example, following an evidentiary hearing.

[7]    Plaintiff specifically avers that plaintiff did not threaten or attempt to hit the defendants with the wooden stool. (Doc. 111, at ¶ 18.)

*Skrtich,* that "[i]n the absence of any evidence that any force, much less the force alleged here, was necessary to maintain order or restore discipline, it is clear that [plaintiff]'s Eighth Amendment rights were violated." 280 F.3d at 1302.

"[B]ecause the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*[,] . . . [t]here is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." *Id.* at 1301 (internal citation omitted). Thus, defendant Ashworth's motion to dismiss plaintiff's excessive force claim is due to be **DENIED**.

**Failure to Intervene**.  The ADOC defendants contend that plaintiff cannot "make" a prima facie case for failure to intervene and deliberate indifference against them. (Doc. 119, at 5.) The undersigned highlights the word make because at the motion to dismiss stage, there is no requirement for plaintiff to prove his claim; instead, he need only properly allege a claim against the defendants for failure to intervene. As is reflected herein, the undersigned is of the opinion that plaintiff has properly stated a claim against the ADOC defendants for failure to intervene.

There is no question but that in the Eighth Amendment excessive force context, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich, supra,* 280 F.2d at 1301 (citations omitted); *see Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008) (same holding in excessive force case arising out of an arrest).  "To be held liable for his nonfeasance, an officer (1) must have observed or had reason to know that excessive force would or was being used, and (2) must have had both the opportunity and the means to prevent harm from occurring." *Campbell v. Harvill,* 2012 WL 928607, *5 (M.D. Ga. Feb. 15, 2012) (citations omitted), *report and*

*recommendation adopted by,* 2012 WL 929614 (M.D. Ga. Mar. 19, 2012). In the amended complaint, plaintiff alleges that defendants Ashworth, Bell, Marsh, Mummert and Pate were present for and witnessed the excessive force applied to him (by Ashworth and Dunn) but consciously took no steps to protect plaintiff or do anything to discourage the excessive force though they had realistic opportunities to take protective/intervening action. (Doc. 111, at ¶¶ 35-38.) In addition, as specifically relates to Dunn's assault, plaintiff alleges that Dunn kicked and punched him in the face and that he "begged Defendant[ Dunn] to quit hitting him during the incident but the physical abuse continued. Defendants had the opportunity to prevent Dunn from kicking and punching Plaintiff but failed to do so." (*Id*. at ¶ 21.)

ADOC defendants Marsh and Pate argue that since plaintiff cannot show excessive force was used by Ashworth, they cannot be held liable for failing to intervene. (Doc. 119, at 5.) However, since the undersigned has already concluded that plaintiff has stated a viable excessive force claim against Ashworth, this argument obviously **FAILS**.[8]

The undersigned appreciates the ADOC defendants to make the following arguments regarding the Dunn assault: (1) plaintiff "has not, and can not, prove that the ADOC Defendants actually had an opportunity to intervene[,]" based upon "the alleged kick by Dunn[;]" (2) plaintiff "has not pled that the ADOC Defendants were subjectively aware that [] serious injury might occur[;]" (3) plaintiff "has failed to plead that the ADOC Defendants knew, or even should have known, that any excessive force

---

[8]   The undersigned would note agreement with plaintiff, in particular, that the defendants' argument that since "the use of pepper spray is reasonable per se, Defendants Marsh and Pate could not have had knowledge of substantial harm to the Plaintiff[,]" (Doc. 119, at 5) is false because it is based on the false premise that the use of pepper spray is "reasonable per se." (Doc. 142, at 7.)

by Dunn was going to occur prior to it actually occurring" and "therefore, he has failed to sufficiently plead that the ADOC Defendants were subjectively aware of any facts that posed a substantial risk of harm to the [p]laintiff[;]" (4) plaintiff has "failed to allege that any actions taken by the ADOC defendants were unreasonable[;]" and (5) plaintiff has failed to plead "how each ADOC [d]efendant was in a position to intervene, and how each ADOC [d]efendant failed to do so." (Doc. 119, at 5-6.)

The undersigned takes this opportunity to address directly only the first argument made by the ADOC defendants since the basis of same is a perversion of the allegations of the complaint and ignores that in the 12(b) context this Court is not concerned with whether a plaintiff can prove his claim, only whether he has stated a claim. The ADOC defendants reference only an "alleged kick" by Dunn, thereby completely turning a blind eye not only to plaintiff's allegations which support the inference that he was kicked and punched numerous times in the face by Dunn but, as well, his allegations that he begged Dunn to stop the assault while the other defendants stood around and watched the assault unfold before their eyes. (*See* Doc. 111, at ¶¶ 21 & 38.)[9] Otherwise, the undersigned simply notes that the ADOC defendants' motions to dismiss this constitutional claim should be **DENIED** on the basis that plaintiff's complaint allegations indicate that defendants Ashworth, Bell, Marsh, Mummert and

---

[9]     The allegations made by plaintiff in his amended complaint simply "beg" the questions of whether the ADOC defendants had the opportunity and were in positions to intervene and whether they knew or should have know of facts posing a substantial risk of harm to plaintiff and that serious injury might occur.

Pate "observed the force being used against Plaintiff and had an opportunity to prevent the harm from occurring." *Campbell, supra,* at *5.[10]

**D.    Plaintiff's State Law Claims**. In counts III through IV of his amended complaint, plaintiff has asserted various state-law claims against the defendants. (*See* Doc. 111, at 8-12.) The ADOC defendants, and apparently defendant Dunn as well (*see* Doc. 131, at ¶1 ("Defendant Dunn adopts and incorporates by reference the Motion to Dismiss [] filed by co-defendants.")), make the argument that all state-law claims should be dismissed since their actions in this case "are within the protection afforded by State-agent immunity." (Doc. 119, at 8.)

Alabama law provides that "[a] State agent *shall* be immune from civil liability in his [] personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising his [] judgment in the administration of a department or agency of government, including, but not limited to, . . . hiring, firing, transferring, or supervising personnel; or [] discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner[.]" *Ex parte Cranman,* 792 So.2d 392, 405 (Ala. 2000) (emphasis in original). Moreover, it is clear under Alabama law that "a State agent *shall not* be immune from civil liability in his [] personal capacity [] when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or [] when the State agent acts willfully,

---

[10]    Qualified immunity is unavailable to these defendants on the basis of this claim. *Id*. ("[I]t is established in the Eleventh Circuit that [an] 'officer has a duty to intervene when another officer uses excessive force.'").

maliciously, fraudulently, in bad faith, beyond his [] authority, or under a mistaken interpretation of the law." *Id.* (emphasis in original). What the defendants neglect to point out, however, is that time and again the Alabama Supreme Court has stated that "a motion to dismiss is typically not the appropriate vehicle by which to assert . . . State-agent immunity and that normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery." *Ex parte Alabama Dep't of Mental Health and Mental Retardation,* 837 So.2d 808, 813-814 (Ala. 2002); *see also Ex parte Bitel,* 45 So.3d 1252, 1255 (Ala. 2010) (same). In other words, "'[i]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6)[.]'" *Ex parte Butts,* 775 So.2d 173, 177 (Ala. 2000) (citation omitted); *see also Ex parte Sawyer,* 984 So.2d 1100, 1109 (Ala. 2007) ("'[I]t is a rare case' where a claim of State-agent immunity could be disposed of without resort to 'matters outside the pleadings,' i.e., based on a base assertion of immunity.").

   The undersigned is of the opinion that this is not one of those rare cases where plaintiff's state-law claims should be decided on motion to dismiss and, therefore, it is recommended that the Court **DENY** the moving parties' motions to dismiss all state-law claims. By way of example, the undersigned finds incongruous the ADOC defendants' argument that plaintiff's assault and battery claim fails to "plead that any actions of any ADOC Defendant were willful, malicious, in bad faith, or beyond their authority[]" (Doc. 119, at 9), given that the amended complaint is replete with allegations that the defendants acted beyond their authority by violating ADOC regulations 327 (Use of Force) and 312 (Chemical Agents) (Doc. 111, at ¶¶ 19 & 22) and that the use of force was malicious and sadistic, in addition to being beyond the defendants' authority (*compare id.* at ¶ 31 *with id.* at 41 ("Defendant [Dunn] assaulted

Plaintiff by intentionally and unlawfully kicking and punching him while Plaintiff was restrained on the ground. Defendant[ Ashworth] further sprayed Plaintiff with a chemical agent without justification.")).[11]  Thus, this Court is in the same position, as was the Alabama Supreme Court in *Ex parte Bitel*, of being unable at this stage of the proceedings to find that there is no possibility that plaintiff will prevail on his state-law claims, *see* 45 So.2d at 1258 ("[I]t is not for this court to determine, based on the complaint, whether the plaintiff will ultimately prevail, but only if he may possibly prevail. It is conceivable that the families could prove facts that would show that one or

---

[11]        The moving defendants' contention that there is no cause of action in Alabama for negligent failure to follow ADOC procedures (Doc. 119, at 9; Doc. 131, at ¶ 20), without any citation whatsoever to case law in support thereof (*see id.*), is also disconcerting. A closer inspection of plaintiff's amended complaint indicates that Johnson is claiming that the defendants owed him the duty to follow all ADOC regulations—including the Use of Force and Chemical Agents regulations—and that they breached their duty by violating those regulations "and by acting contrary to their training methods and procedures." (Doc. 111, at ¶¶44-46.) And a closer inspection of Alabama law indicates that plaintiff may be able to maintain an action against defendants for negligently failing to discharge their duties pursuant to detailed regulations, since it is clear that supervisors can be sued for negligence in failing to discharge duties pursuant to detailed rules or regulations.  *Compare Ex parte Bitel, supra*, 45 So.2d at 1256, 1258 & 1259 (in denying petition for writ of mandamus, which sought the dismissal of claims against supervisors based on State-agent immunity, including negligence claim, the Supreme Court noted that it could not "rule out at this stage whether the supervisors may have acted beyond their authority in failing to discharge duties pursuant to detailed rules or regulations.") *with Ex parte Alabama Dep't of Mental Health and Mental Retardation*, 837 So.2d at 814 & 814-815 ("In *Ex parte Butts*, this Court addressed the appropriateness of the dismissal of claims alleging negligence and wantonness against Jimmy Butts, who was then the Commissioner of the Alabama Department of Transportation. Commissioner Butts, like Sawyer, was the administrative head of a State agency, a cabinet-level position. He was sued in his official and individual capacities. The plaintiff in that case, which involved a bridge collapse in which two people were killed, made claims against Commissioner Butts alleging negligence or wantonness for failure to halt the demolition; and negligence or wantonness relating to training and supervising the personnel assigned to the bridge project. Those claims are similar to those Percer makes against Sawyer in her individual capacity. . . . The claims against Sawyer that we have determined are made against her in her individual capacity are fact intensive. Sawyer's Rule 12(b) motion to dismiss is premature with regard to these claims. . . . Sawyer [] has failed to demonstrate, at this stage of this case, a clear legal right to a dismissal of the claims made against her in her individual capacity."). At the very least, it is improper at this stage of the proceedings for the undersigned to determine that there is no cause of action in Alabama for negligent failure to follow ADOC regulations/procedures where the moving parties have not cited any case law or authority supporting such proposition.

more of the employees failed to discharge duties pursuant to a checklist or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. If so, the families may possibly prevail on their claims. Therefore, the trial court properly denied the employees' motion to dismiss the claims stated against them in their individual capacities." (internal quotation marks omitted)).[12] Accordingly, it is recommended that this Court find that the moving parties' have failed to demonstrate, at this stage of the proceedings, a clear legal right to the dismissal of the state-law claims asserted against them in their individual capacities and **DENY** the motions to dismiss these claims.

     **E.**    <u>**Costs and Attorney's Fees**</u>. Without citing to any case law, or other binding authority, defendant Dunn argues, in a conclusory manner, that "all claims for an award of costs and attorney's fees" against him should be dismissed since counsel was appointed to represent plaintiff and this Court's Standing Order No. 16 provides for "reimbursement [of] counsel's out-of-pocket expenses, compensation, witness fees, etc. in this matter." (Doc. 131, at ¶ 21.) Defendant Dunn's request in this regard is not well taken and is due to be **DENIED**. *Compare* SD ALA LR 67.4(a) ("A Federal Practice Fund shall be maintained by the clerk of court to compensate appointed counsel in civil rights actions for those expenses authorized by prior order of the judge to whom the case is assigned, and reasonably incurred. Compensation from this fund is *not* authorized for attorney's fees for in-court or out-of-court time or for expenses for which

---

[12]     As for the ADOC defendants' concern over whether all defendants are "covered" by all counts of the amended complaint (*see* Doc. 119, at 9 ("[T]o the extent that the Plaintiff alleges Assault and Battery against Defendants Pate or Marsh, this claim is due to be dismissed.")), such housekeeping matters can be taken care of later in the proceedings. Indeed, the parties can (and are encouraged to) discuss such matters and inform the undersigned in later pleadings (or at the evidentiary hearing) which defendants are being pursued with respect to each count asserted in the amended complaint.

any other source of payment exists." (emphasis supplied)) *with* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, *1983*, 1985, and 1986 of this title . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" (emphasis supplied)); *see Horton v. Achievement Services for Northeast Kansas, Inc.,* 170 F.R.D. 22, 24 (D. Kan. 1996) (recognizing that the purpose of the local rule permitting reimbursement from "the Bar Registration Fund," a fund similar in all respects to this Court's fund, "was not to provide an additional source for recovery of expenses in cases in which the plaintiff *was successful,*" such as where a plaintiff is "a prevailing party for the purposes of taxation of costs under Fed.R.Civ.P. 54(d) and reimbursement of attorney fees under 42 U.S.C. § 1988[.]" (emphasis supplied)). This Court appointed William G. Chason, Esquire, as counsel for plaintiff in this action brought, at least partially, pursuant to 42 U.S.C. § 1983, and should plaintiff be the prevailing party in this action, he will be entitled to an award of reasonable attorney's fees under 42 U.S.C. § 1988(b) and taxation of costs under Fed.R.Civ.P. 54(d).[13]

## CONCLUSION

The defendants' motions to dismiss plaintiff's amended complaint (Docs. 119 & 131) are due to be **DENIED IN THEIR ENTIRETY,** it being clear that the plaintiff

---

[13]     The final matter the undersigned discusses is plaintiff's request that he be awarded reasonable attorney's fees in responding to the defendants' motions (Doc. 143, at 3-4). While not unsympathetic to the arguments of plaintiff's counsel, the undersigned is unable to recommend the granting of such fees since the amended complaint invited, at the very least, the motions to dismiss by not making clear the "capacity" in which the named defendants were being sued. The undersigned, however, does place the defendants on notice that should they intend to filed motions for summary judgment, those motions should be specifically tailored to only those claims about which there are *no material* factual disputes; to the extent material factual disputes exist the defendants should await an evidentiary hearing or trial for appropriate disposition of all such claims.

means to sue the defendants solely in their individual capacities and the defendants having failed to establish their entitlement to the dismissal of any of the plaintiff's claims. In regard to capacity, however, plaintiff is extended leave of court to amend his complaint no later than **September 24, 2012** to reflect that all defendants are sued solely in their individual capacities, as well as to correct defendant English's name to reflect this defendant's true first name. The defendants are expected to answer the second amended complaint not later than **October 4, 2012**.

Defendant Dunn's motion to strike (Doc. 133) is due to be **DENIED** as is plaintiff's request for an award of attorney's fees incurred in responding to the defendants' motions (Doc. 143, at 3-4).

**DONE** this the 14th day of September, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).