**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DAVID L. JOHNSON,** | **)** |
| | **)** |
| **Plaintiff,** | **)** |
| | **)** |
| **vs.** | **)**    **CIVIL ACTION NO. 11-228-CG-C** |
| | **)** |
| **PENTON ASHWORTH, et al.,** | **)** |
| | **)** |
| **Defendants** | **)** |
| | **)** |

## ORDER

This matter is before the court on the Report and Recommendation of the

Magistrate Judge (Doc. 203), the objections thereto of plaintiff (Doc. 207), defendant

Dunn (Doc. 206), and defendants Ashworth, Pate and Marsh (Doc. 208) as well as

the responses to the objections filed by plaintiff (Doc. 212) and defendants

Ashworth, and English (Doc. 211).  Upon a <u>de</u> <u>novo</u> review of those portions of the

report and recommendation to which objection is made, the court will adopt the

Report and Recommendation, but finds that clarification is necessary, as discussed

below, with regard to plaintiff's claims for willful and wanton misconduct.


## I. Background

This action arises from events that occurred on December 31, 2010, while

plaintiff was incarcerated at Holman Correctional Facility in Atmore, Alabama.  On

that date, the complaint alleges that plaintiff was told that his blood sugar was high and that he should report to the shift office. At the shift office, defendant Ashworth advised the plaintiff that he was being moved to a one-man holding cell on death row. Plaintiff alleges that he requested to sign a medical refusal form so that he could remain in his normal cell block. Defendants Ashworth and Dunn allegedly became aggressive and suggested that defendants would physically move plaintiff. Ashworth sprayed plaintiff with a chemical agent called Sabre Red and plaintiff alleges he backed up against a wall and picked up a small wooden stool to shield his face. According to the complaint, Ashworth then sprayed plaintiff a second time and plaintiff dropped the wooden stool. Defendants then allegedly tackled plaintiff, pinned him on the ground, so that his chest was facing the ground and his hands were behind his back and they handcuffed plaintiff. Dunn allegedly kicked and punched plaintiff in the face while plaintiff was immobile and controlled on the ground. The defendants allegedly attempted to conceal what occurred by fabricating a story that plaintiff's injuries arose from a brachial stun technique and/or from plaintiff hitting his face on the ground when he was tackled. Because of the assault and attempted cover-up, defendants, Dunn, Bell and Mummert were forced to resign or were fired by the ADOC. Defendant Dunn is alleged to have had a reputation for violent behavior, particularly towards African-American inmates and was involved in previous fights both prior to and while working at Holman Correctional Facility.

The plaintiff's amended complaints assert claims brought pursuant to § 1983

resulting from deprivations of plaintiff's rights under the Eighth and Fourteenth Amendments and for claims of tortious behavior under Alabama law. (Docs 111, ¶ 1; 155, ¶ 1). Plaintiff asserts claims for excessive force (Count I), for failure to intervene and deliberate indifference (Count II), for assault and battery (Count III), for negligent failure to follow ADOC procedure (Count IV), for negligent retention and supervision (Count V), and for willful and wanton misconduct (Count VI). (Docs. 111 & 155). Defendants Ashworth, Pate, Marsh and English moved for summary judgment. (Doc. 189). Neither defendant Dunn nor plaintiff moved for summary judgment.

## II. The Magistrate Judge's Report & Recommendation

The Magistrate Judge recommended that the motion for summary judgment be granted in part and denied in part. Specifically, the Magistrate found the following:

1) the motion should be granted in its entirety as to defendant English;

2) Ashworth, Pate and Marsh are not entitled to qualified immunity for failing to intervene (Doc. 203, pp. 29-31);

3) Ashworth is not entitled to qualified immunity on the claim for excessive force (Doc. 203, p. 33);

4) plaintiff's claims are not barred by the PLRA as plaintiff has evidence of more than a de minimis injury (Doc. 203, pp. 34-35);

5) there is sufficient evidence to establish that Ashworth's actions - twice spraying plaintiff with Sabre Red - constitutes an assault and battery, but that defendants Marsh and Pate are entitled to summary judgment with regard to the assault and battery claim (Doc. 203, pp.

3

37-41);

6) Ashworth is not entitled to state-agent immunity with regard to violating ADOC regulations for spraying plaintiff with pepper spray without warning where such force was not warranted (Doc. 203, p. 45);

7) Pate and Marsh are entitled to summary judgment on plaintiff's claim for negligent failure to follow ADOC regulations as is Ashworth with regard to the alleged failure to follow regulations relating to Dunn's alleged use of excessive force (Doc. 203, p.46);

8) Ashworth, Pate and Marsh are entitled to summary judgment on plaintiff's claim that they willfully and wantonly failed to prevent Dunn from kicking and punching Plaintiff (Doc. 203, p. 46, n. 37); and

9) defendants are entitled to summary judgment on plaintiff's claim for negligent retention and supervision since defendants are not plaintiff's employer and thus, cannot be held liable under a state law claim of negligent supervision, plaintiff has not stated a federal failure to supervise claim, and even if the claim had been brought pursuant to § 1983, the claim fails because plaintiff failed to show a history of widespread abuse sufficient to notify the supervisors of the need to correct a deprivation (Doc. 203, pp. 47-54).

## III. Discussion

### A. Defendant Dunn's Objection

Dunn objects to the Magistrate Judge's findings of facts regarding the actions of Dunn during the altercation on December 31, 2010. Dunn did not move for summary judgment or submit any response to the summary judgment motion filed by other defendants. Dunn acknowledges that the Magistrate Judge properly viewed the facts in a light most favorable to the plaintiff, but contends that the report and recommendation appears to make findings that certain facts are conclusively established. Dunn asserts that there are questions of material fact that preclude a conclusive finding of his liability and he appears to want a

clarification that the Magistrate Judge's findings regarding Dunn's actions are merely based on the facts as presented in the light most favorable to plaintiff.

The Report and Recommendation expressly states that "the Court has viewed the facts in the light most favorable to the plaintiff." (Doc. 203, p. 27). The Magistrate was tasked with making determinations of facts based on the motion and supporting and responsive filings before him. To the extent there were gaps in the facts presented or the facts were in dispute, they were correctly viewed in the light most favorable to plaintiff. The findings and conclusions of facts with regard to Dunn do not carry forward to trial and were only relevant for the purpose of the motion for summary judgment to the extent they impacted the claims asserted against the moving defendants. No rulings were made with regard to Dunn's liability in this case since no motions were filed by plaintiff or Dunn regarding the claims asserted against Dunn. The court is aware that Dunn disputes some of the findings in the Report and Recommendation, but since those findings have no bearing on Dunn's liability and they were correctly based on the facts as viewed in the light most favorable to plaintiff, the court finds they are not in error.

### B. Plaintiff's Objection

Plaintiff contends that the Report and Recommendation incorrectly found that there is no genuine issue of material fact regarding plaintiff's supervision claim under 42 U.S.C. § 1983 against Ashworth and English. As stated above, the Magistrate Judge found that defendants are entitled to summary judgment on plaintiff's claim for negligent retention and supervision because defendants are not

plaintiff's employer and thus, cannot be held liable under a state law claim of negligent supervision. The Magistrate Judge further found that although plaintiff only stated a state law claim in his complaint, even if his claim had been brought pursuant to § 1983, the claim fails because plaintiff failed to show a history of widespread abuse sufficient to notify the supervisors of the need to correct a deprivation. (Doc. 203, pp. 47-54).

Plaintiff asserts that he has produced substantial evidence that defendants' failure to follow their statutory and administrative duties to report Dunn's previous misconduct, namely the "Broadhead incident," allowed Dunn to remain employed at Holman Correctional Facility. According to plaintiff, the Magistrate Judge's conclusions were based on erroneous conclusions of law and were not based on the facts viewed in the light most favorable to plaintiff. Plaintiff points to evidence that Ashworth and English concealed the use of excessive force committed on November 10, 2010, by Dunn against Broadhead, who filed a complaint alleging severe injuries just six-weeks prior to the incident at issue in this case. According to plaintiff, Ashworth and English were compelled by law to report the excessive force and if they had, Dunn would have been fired. Thus, plaintiff argues that a causal relationship between their failure to report and the injuries sustained by plaintiff has been established.

Defendants Ashworth and English respond that plaintiff has expressly and impliedly abandoned his state law supervision claims and did not plead a § 1983 claim based on supervisory liability. Additionally, defendants contend that the

Magistrate Judge properly found that no causal connection existed between any inaction of the defendants to any constitutional injury to the plaintiff.

After review of the amended complaints[1] the court finds that the Magistrate Judge correctly found that plaintiff has not stated a federal failure to supervise claim in his complaint. The claim is labeled as a claim for "NEGLIGENT RETENTION AND SUPERVISION" and does not include any reference to § 1983. (Doc. 155, p. 8). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The allegations under Count V do not correspond with a federal claim but instead make traditional state law allegations that the defendants breached their duty to properly supervise. (Doc. 155, §§ 52, 55). As such, the undersigned agrees with the Magistrate Judge's finding that plaintiff failed to properly state a federal claim for failure to supervise. Under the circumstances the undersigned finds it unnecessary to delve further into whether a federal claim could have survived summary judgment, since plaintiff did not allege a federal failure to supervise claim, and further finds that summary judgment is due to be granted with regard to plaintiff's state law negligent retention and supervision claim.

---

1 The Magistrate Judge's analysis of the motion for summary judgment quotes plaintiff's first amended complaint (Doc. 111). Plaintiff filed a second amended complaint (Doc. 155); however, the second amended complaint does not materially change the negligent retention and supervision allegations asserted in Count V.

**C. The Objections of Ashworth, Pate and Marsh**

Defendants Ashworth, Pate and Marsh contend that summary judgment should be granted in their favor because they are entitled to qualified immunity. Specifically they argue that the Magistrate erred in not granting summary judgment with regard to: 1) the excessive force claim against Ashworth for spraying Sabre Red, 2) the failure to intervene claims against Ashworth, Pate, and Marsh in connection with Dunn's excessive force, 3) the failure to intervene claims against Pate and Marsh in connection with Ashworth's alleged excessive force, 4) the assault and battery claims against Ashworth, 5) the negligent failure to follow ADOC regulations against Ashworth, and 6) the wantonness claims against Ashworth, Pate and Marsh.

**1) Excessive Force Claim against Ashworth for Pepper Spray**

Ashworth first asserts that plaintiff has not set forth specific facts to support an essential element to his excessive force claim. Ashworth correctly states that "[i]n order to have a valid claim . . . the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321 (11th Cir. 2002). Additionally, Ashworth points out that "a plaintiff must prove that a requisite amount of force was used against him." <u>Connell v. Tate</u>, 2012 WL 252817, * 12 (M.D. Fla. Jan. 25, 2012) (citation omitted). The evidence viewed in the light most favorable to plaintiff must go "beyond a mere dispute over the reasonableness of the force used" and must "support a reliable inference of wantonness in the infliction of pain." <u>Brown v. Smith</u>, 813 F.2d 1187,

1188 (11th Cir. 1987).  However, as the Magistrate Judge stated,[2] "'[a] basis for an Eighth Amendment claim exists when . . . an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat.'" (Doc. 203, p. 32 (quoting <u>Treats v. Morgan</u>, 308 F.3d 868, 873 (8th Cir. 2002)).  In the instant case, looking at the facts in the light most favorable to plaintiff, the plaintiff did not present a threat and was being ordered to move to a solitary cell for questionable reasons.  According to the plaintiff, he was sprayed without warning.

Defendants assert that plaintiff's statement that he was sprayed without warning is conclusory and is contrary to other statements in plaintiff's affidavit.  Plaintiff's affidavit indicates that Ashworth pulled the pepper spray from his side before plaintiff told the officers that "whatever they planned to do to me in Q-unit they could go ahead and do to me on the hallway." (Doc. 199-1, ¶¶ 6, 8).  As such, defendants assert that the plaintiff had warning that he would be sprayed if he did not comply.  However, the affidavit does not fully indicate the timing of the spraying.  Plaintiff states that Ashworth drew the canister from his side "[a]s we argued" and then goes on to explain the scene and why he believed that the officers, especially Dunn, had malicious motives. (Doc. 199, ¶¶6-8).  He states that because he feared that they would harm him when he got to Q-unit where there would be no witnesses he told them to go ahead and do whatever they planned to do in Q-unit.

_____

[2] The Magistrate Judge also included the general tenets of law stated above that are relied on by defendants.

(Doc. 199, ¶ 8). While the order of the statements in the affidavit might be read to imply that a significant amount of time passed between when the pepper spray was pulled out and when it was sprayed, it could also be read to describe the events happening together. The plaintiff's statement to "go ahead" was part of the argument between the two and Ashworth is said to have pulled out the canister "as we argued." Additionally, just because an officer has pulled a weapon from his side and has it at the ready, does not necessarily mean he intends to use it. According to plaintiff, no verbal warning was given. The defendant did not say "go ahead and spray me," he said go ahead and do what you intend to do in Q-unit. The court presumes that Ashworth would not admit that he intended to take plaintiff to Q-unit to spray him with pepper spray and it is not clear that plaintiff knew or should have known that he was about to be sprayed by Ashworth, though he feared the officers had bad intentions. The affidavit does not demonstrate that plaintiff was given sufficient notice before being sprayed such that he could have changed his conduct and avoided being sprayed. A warning is useless if it does not give the prisoner a chance to comply. Accordingly, the undersigned agrees with the Magistrate Judge that there is sufficient evidence for a jury to find that the officer sprayed an inmate, who posed no threat, without warning and thus, that there is a basis for an Eighth Amendment claim. See Treats, 308 F.3d at 873.

Defendants next assert that the Report and Recommendation fails to take into consideration the first prong of qualified immunity – that plaintiff must show that a constitutional or statutory right has been violated. Defendants contend that

10

plaintiff has failed to submit sufficient evidence that would indicate that Ashworth's actions were either malicious or sadistic or excessive and unnecessary or wanton. However, this argument fails for the same reason as defendant's first argument – there is sufficient evidence to indicate that Ashworth may have sprayed plaintiff without warning even though plaintiff posed no threat. That conduct is evidence that Ashworth acted maliciously or wantonly to cause plaintiff harm. See Treats, 308 F.3d at 873.

Lastly, defendants assert that the Magistrate Judge applied the wrong standard with regard to the pepper spray by Ashworth. Defendants complain that the Magistrate Judge focused his analysis on the issue of de minimus injury, but barley mentioned the subjective components of excessive force which should be analyzed using the Supreme Court's five factor test laid out in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986). In Whitley, the Court stated the following:

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (CA2) (Friendly, J.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). As the District Judge correctly perceived, "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," 481 F.2d, at 1033, are relevant to that ultimate determination. See 546 F.Supp., at 733. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it

occur. See Duckworth v. Franzen, 780 F.2d 645, 652 (CA7 1985) (equating "deliberate indifference," in an Eighth Amendment case involving security risks, with "recklessness in criminal law," which "implies an act so dangerous that the defendant's knowledge of the risk can be inferred"); cf. Block v. Rutherford, 468 U.S. 576, 584, 104 S.Ct. 3227, 3231, 82 L.Ed.2d 438 (1984) (requiring pretrial detainees claiming that they were subjected to "punishment" without due process to prove intent to punish or show that the challenged conduct " 'is not reasonably related to a legitimate goal,' " from which an intent to punish may be inferred); Bell v. Wolfish, supra, 441 U.S., at 539, 99 S.Ct., at 1874. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.

Whitley, 475 U.S. at 320-321, 106 S.Ct. at 1084-1085. Thus, the Whitley Court listed five factors to consider: 1) "the need for the application of force," 2) "the relationship between the need and the amount of force that was used," 3) "the extent of injury inflicted," 4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and 5) "any efforts made to temper the severity of a forceful response." Id. The Magistrate Judge discussed whether the injury was de minimus and noted the other four factors listed above, stating that "this case presents material questions of fact regarding each of these [four other] factors." (Doc. 203, p. 31, n. 27). After reviewing the evidence presented, the undersigned agrees.

The court notes that to maintain an excessive force claim, a plaintiff is not necessarily required to prove an express intent to inflict unnecessary pain, because a showing of deliberate indifference may be sufficient, at least where there are no concerns for the safety of prison staff or other inmates. See Whitley, 475 U.S. at

319-320, 106 S.Ct. at 1084 (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). However, when safety is at issue, prison officials must balance competing institutional concerns for the safety of prison staff or other inmates with the possible harms to inmates against whom force might be used. <u>Id.</u> at 320.

Where significant safety concerns are present, the factors listed in <u>Whitley</u> are useful in determining whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. In the instant case, looking at the facts in the light most favorable to plaintiff, there is some doubt whether the plaintiff was being asked to move to Q-unit for a legitimate reason. Plaintiff was being moved to a solitary cell reportedly because of his blood-sugar level, but there was no reason to quarantine or isolate the plaintiff and defendants were apparently not taking him there for medication or treatment. Plaintiff reports that he felt fine. As the Magistrate Judge noted (Doc. 203, pp. 6-7 & n 8, p. 45 n. 36), there is no direct testimony from the doctor or nurse who purportedly told Ashworth that plaintiff should be moved to Q-unit or to support Ashworth's statement that plaintiff could not sign a waiver refusing medical treatment. Only Ashworth's hearsay testimony has been offered to explain why Ashworth was moving plaintiff to a solitary cell and why he continued to demand plaintiff be moved even after plaintiff requested to sign a waiver. (Doc. 189-10, pp. 3-4; Doc. 189-11, p. 6). By plaintiff's account, although he voiced his displeasure with the order to move and he requested he be allowed to waive

13

treatment, he was not aggressive. Looking at the facts in the light most favorable to plaintiff, there was no need to apply any real force. There was no physical struggle prior to the pepper spray. Plaintiff did not physically resist the defendants until Ashworth sprayed plaintiff and he responded by backing up and picking up the stool to shield himself from the spray. There were six officers that had plaintiff cornered at that time. (Doc. 199-1, ¶ 8). There was no apparent reason to use force that Ashworth knew would be painful when lesser force or no force could have been used. If Ashworth had clearly warned plaintiff that he would spray him if he did not comply, that alone may have been sufficient. There was no real threat to the safety of the staff and other inmates. While safety for the prison is generally best served by maintaining order, there was no immediate risk to anyone such that the officers were pressed for time and could not use other methods. Accordingly, the court finds that there is a question of fact whether pepper spray needed to be used and even whether the order to move plaintiff should have been carried out or enforced. There is also a question of fact whether there was any real threat to the safety of staff and inmates and whether less harmful efforts, such as a simple warning or smaller amount of spray, should have been used under the circumstances.

Defendants contend that the facts in several of the cases relied on by the Magistrate Judge are clearly distinguishable or indicate that no constitutional violation occurred. Specifically, defendants object to the Magistrate Judge's use of Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008), Iko v. Skreve, 535 F.3d 225

(4th Cir. 2008), <u>Soto v. Dickey</u>, 744 F.2d 1260 (7th Cir. 1984), and <u>Treats v. Morgan</u>, 308 F.3d 868, 873 (8th Cir. 2002).

In <u>Danley</u>, the Court indicated that because there is often no real injury caused, the initial use of pepper spray is not necessarily a constitutional violation. See <u>Danley</u>, 540 F.3d at 1308. The initial use of pepper spray does not cause any substantial or long-lasting injury and may be " 'a very reasonable alternative to escalating a physical struggle.' " <u>Id.</u> (quoting <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1348 (11th Cir. 2002)). The <u>Danley</u> court stated that "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." <u>Id.</u> at 1307 (citation omitted). "Pepper spray is an accepted non-lethal means of controlling unruly inmates." <u>Id.</u> (citations omitted). Although the <u>Danley</u> Court found the initial use of pepper spray would not have been excessive standing alone, it found a violation because the use of pepper spray coupled with plaintiff's treatment following the pepper spray constituted a "single course of conduct" inseparable from the initial use of pepper spray. <u>Id.</u> at 1307-1309. In <u>Danley</u>, the plaintiff had been taken to a small cell for him to use the toilet. <u>Id.</u> at 1304. The following then occurred:

> After Danley finished using the toilet, jailers Allyn, Wood, and Woods began to take him from the small cell back to the larger group cell. Danley was still upset about the lack of toilet paper and asked them "if he could please have some 'fucking' or 'damn' toilet paper to wipe himself." Allyn told Danley to watch his language, to shut up, and to get back into the small cell. Danley replied that he was done using the toilet, and Allyn told him that if he did not get back in the small cell "she was going to spray him." Danley then asked Allyn why she was "fucking" with him and what "spray me" meant. Instead of answering

the second part of Danley's question, Allyn decided to show him what she meant. She told Wood to pepper spray Danley, and Wood sprayed him "at close range" for three to five seconds.

Wood and Woods then pushed Danley back into the small cell and closed the door. Because Danley had been in the doorway of the cell when he was sprayed, the spray remained not only on him and his clothes but also in the air of the small, poorly ventilated cell. Danley began having trouble breathing, started to hyperventilate, screamed and cried to the three jailers that he could not breathe, and begged to be let out. The effects were so severe that he "feared he was going to die." In response to his pleas for help, the jailers laughed at Danley and made fun of him; among other things, Wood and Woods held their hands to their necks in a "mock-choking" gesture. They also told Danley that "if he did not shut up he would not be let out."

Id.

Defendants contend that Danley demonstrates that plaintiff's constitutional rights were not violated when Ashworth sprayed plaintiff. However, the instant case is different from the Danley case because Ashworth did not warn plaintiff that he would be sprayed if he did not comply. Additionally, even by Ashworth's account of the incident, Ashworth sprayed plaintiff twice. (Doc. 189-10, p. 15, 17). Plaintiff also reportedly was sprayed by Dunn during that same time period. Ashworth sprayed plaintiff with pepper spray and plaintiff reportedly backed up against the wall as the correctional officers closed in around him. (Doc. 199-1, ¶ 8). Dunn then began spraying plaintiff, and finally Ashworth sprayed the plaintiff again before tackling plaintiff to the ground. Plaintiff was never given a chance to comply or submit in any meaningful manner as he was repeatedly sprayed. It is excessive force for a jailer to continue using force against a prisoner who has clearly stopped

resisting. <u>Danley</u>, 540 F.3d at 1309.[3] The undersigned finds there is a question of fact whether the amount used was excessive.

Defendants contend that the <u>Iko</u> case demonstrates that the initial use of pepper spray is constitutional. The Court in <u>Iko</u> stated that the "need for the application of force" factor was satisfied in that case because the use of some pepper spray in carrying out a cell extraction is permissible "to incapacitate the inmate prior to committing staff to the procedure." <u>Iko</u>, 535 F.3d at 239. However, in <u>Iko</u>, more than "the minimal amount of chemical agent necessary" was used and the officers continued to spray the inmate even after he had lain down on the floor of his cell and then the officers did not try to ameliorate the effects of the pepper spray. <u>Id.</u> at 240. The <u>Iko</u> Court stated that as the spraying continued the threat reasonably perceived "must have decreased." <u>Id.</u> The Court found that all of the factors combined to provide an inference that the officer wantonly inflicted pain upon the plaintiff by deploying an excessive amount of pepper spray. <u>Id.</u> This court notes that in <u>Iko</u>, the "cell extraction" was not a simple order to move the inmate, but was necessary because of the inmate's violent and erratic conduct. Iko had been involved in a number of previous violent prison incidents including assaults on correctional officers and other inmates. <u>Id.</u> at 230. Iko had also exhibited intermittent mental-health problems and at times engaged in violent outbursts and

---

3 The court is cognizant of the fact that plaintiff at some point picked up a stool that was next to him to reportedly shield himself from the pepper spray. While this conduct may have given the officers reason to believe plaintiff was continuing to resist, the court finds that remains a question of fact for the jury.

other reclusive, uncooperative behavior. Id. When the incident at issue occurred, Iko had been moved to an isolation cell after being involved in a violent altercation with his cellmate. Id. An officer attempted to communicate with him, but Iko would only stare at the officer or respond in another language although Iko knew English. Id. at 231. Three different members of the prison mental-health staff visited Iko over the next two days but he continued to display erratic behavior and a psychologist recommended that he be transferred to the "Special Observation Housing" unit for observation and medical attention. Id. It was under these circumstances that a cell extraction was ordered and that an initial use of pepper spray was warranted when Iko did not comply with the officers' order to come to the door of his cell to be handcuffed. Unlike the plaintiff in Iko, the plaintiff in the instant case did not have a history of mental health problems and assaults and had not been acting erratic or violent. Additionally, as in Iko, the officers did not just administer one short spray of pepper spray. As discussed above, plaintiff was repeatedly sprayed by the officers. The court finds there is a question of fact whether it was reasonable to use pepper spray on plaintiff under the circumstances as well as whether significantly more pepper spray was used than was necessary.

In Soto, the court found that the use of pepper spray in that case did not constitute excessive force. The Soto Court stressed the need for safety and discipline in prisons. However, the conduct at issue in Soto was the use of pepper spray after following an explicit procedure that was described as follows:

The record and exhibits uncontradictedly establish that when an

inmate who is hollering, rattling the bars, yelling obscenities at the
staff, throwing objects from his cell at the staff, refused to return a
meal tray, blocks the closing of a door, refuses to be double-celled or
refuses to comply with direction, he is ordered to come to the front of
the cell and put his hands out so that he can be handcuffed, guards can
then enter the cell and remove a meal tray or an object used to throw
liquid; and where necessary, moved him to another cell with a wooden
door which can be closed to prevent his hollering or yelling from
disturbing others, or prevent him from throwing liquid or other objects
on the officers, or double-celled or whatever is appropriate. If he
refuses to come to the front of the cell to be handcuffed after being
ordered so to do, and the guard cannot prevail upon him to do so, a
supervisor is called. The supervisor then attempts to persuade the
inmate to comply with the order. If the inmate refuses, he is then
ordered by the supervisor to come to the front of the cell and be
handcuffed. If he still refuses, he is told that unless he does do so, he
will be maced. If he still refuses, mace is then used.

Soto, 744 F.2d at 1264-1265. The force at issue was the use of pepper spray on five

inmates in a maximum security prison who had each been sent to "Adjustment

Center" ("AC") because of a violation of prison rules. Id. at 1262-1266. Notably, "the

first four were a serious disciplinary problem" and had been "involved in many

violations of the rules and orders of the institution, and spent much time in the AC."

Id. at 1265. The inmates were described as "unpredictable – passive at one moment

and aggressive at another." Id. Two of them, Mallory and McAdoo, had previously

assaulted a staff officer and Soto admitted to having assaulted numerous prisoners

and staff officers and being involved in fights with several inmates. Id. The

circumstances in Soto are clearly different from those in the instant case.  In the

instant case, the plaintiff was not being held in a maximum security prison and has

not been shown to have had a history of aggressive or unpredictable behavior.

When plaintiff refused to be moved to Q-unit, Ashworth did not call a supervisor to

order him to comply and plaintiff was never told that unless he did so, he would be sprayed. Plaintiff was not given the chance to comply after being warned that he would be sprayed.

In <u>Treats</u>, the Eighth Circuit upheld a district court's denial of summary judgment and held that a genuine issue of material fact existed in that case as to whether a correction officer's use of pepper spray and force was reasonable. The facts as set forth by the plaintiff in <u>Treats</u> showed that the plaintiff, a state prisoner, failed to obey commands and questioned a prison officer's actions, but did not pose a threat to the officer. <u>Id</u>. at 873. The officer demanded that the prisoner take a copy of a confiscation form, and the prisoner refused to take the form. <u>Id.</u> at 870. The prisoner then turned to talk with the officer's supervisor, and without warning, the officer sprayed the prisoner with pepper spray. Another officer then slammed the prisoner into the ground and handcuffed him. <u>Id.</u> The <u>Treats</u> Court found that the evidence did not show an objective need for the force used because the prisoner did not jeopardize any person's safety or threaten prison security. <u>Id.</u> at 872. The court reasoned that "[t]he law recognizes that order and discipline are important in running a correctional institution, but that does not authorize the arbitrary use of force, nor does it justify punitive use of force on difficult inmates not posing a real threat to other persons or raising security concerns." <u>Id.</u> at 872 (citations omitted). The court further noted that "[n]ot every instance of inmate resistance justifies the use of force, ... and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." <u>Id.</u>

at 873 (citations omitted).  The Eighth Circuit held that "[a] basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat." Id. (citations omitted).

Defendants point out that in Treats, Arkansas state regulations applied which stated that an officer is required to warn an inmate and give him a chance to comply before using any chemical agent on an inmate.  While the Arkansas regulations obviously do not apply here, Alabama Department of Corrections regulations require that "[a] verbal warning of the intended action shall be given prior to discharging chemical agents" and "are to be used only to gain (or regain) control of the situation when methods situated lesser than chemical agents … have not been successful or when such methods have been determined to be ineffective." (ADOC Reg. No. 312(V)(H) & (I) – see Doc. 199-22, p. 9).  Moreover, although stated as a fact in the case, the Treats Court did not appear to rely on the regulation in its analysis.  Even if no express regulation applied to the instant case, there are facts alleged from which a jury could find that Ashworth sprayed the plaintiff for an extended period of time, for questionable reason, when a simple warning or other lesser method may have sufficed.

Defendants also contend that the Magistrate Judge erred in not granting summary judgment with regard to the use of pepper spray because the claims are barred by the Prison Litigation Reform Act (PLRA). (Doc. 208, p. 23).  The Magistrate Judge found that plaintiff's claims are not barred by the PLRA as

plaintiff has evidence of more than a de minimis injury (Doc. 203, pp. 34-35). The

PLRA limits recovery as follows:

> No Federal civil action may be brought by a prisoner confined in a jail,
> prison, or other correctional facility, for mental or emotional injury
> suffered while in custody without a prior showing of physical injury or
> the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C.A. § 1997e(e). The Magistrate Judge noted that plaintiff "has put forth a

plethora of evidence of physical injury" which included evidence that plaintiff

developed a cataract that may be attributable to the trauma he sustained on

December 31, 2010. (Doc. 203, p. 35). A review of the testimony of Dr. Jones

indicates that plaintiff's left eye was traumatized and was treated for inflammation

(iritis). (Doc. 190-10, pp. 3-6). Plaintiff also suffered a loss of vision in that eye and

later developed a cataract. (Doc. 190-10, pp. 4-5). While there was evidence that

plaintiff's cataract could have been caused by trauma to his eye, Dr. Jones testified

that the cataract could not have been caused by exposure to pepper spray. (Doc.

190-10, p. 7). As such, plaintiff clearly suffered more than a de minimis injury from

the incident, but it is questionable whether he suffered more than a de minimis

injury as a result of the pepper spray. However, looking at the facts in the light

most favorable to plaintiff, the undersigned finds that there is sufficient evidence to

raise a question of fact on that issue. Defendants have not shown that the

inflammation and vision loss suffered by plaintiff was not caused at least partially

by the Sabre Red. The inflammation and vision loss both continued until at least

January 11, 2011, with the iritis being resolved by plaintiff's February 3, 2011, visit

with Dr. Jones. (Doc. 190-10, pp. 5-6).   The court finds the facts support a finding that plaintiff suffered more than a de minimis injury as a result of being sprayed with Sabre Red.[4]

### 2) Failure to Intervene Claims against Ashworth, Pate, and Marsh in connection with Dunn's use of Excessive Force

The Magistrate Judge found that Ashworth, Pate and Marsh are not entitled to qualified immunity for failing to intervene. (Doc. 203, pp. 29-31).  The Magistrate Judge reasoned that although these defendants deny seeing Dunn kick and hit plaintiff and contend that they could not have done anything to stop the assault, the evidence considered in the light most favorable to plaintiff refutes defendants' assertions. (Doc. 203, p. 29).  Inmate witnesses, who were farther removed from the attack than were Ashworth, Pate and Marsh, report that they could clearly observe the attack.  Additionally, there is testimony from the plaintiff and other inmate witnesses that the defendants could have taken some action after Dunn's initial kick, but took no action to physically stop Dunn or to order Dunn to stop.

Defendants contend that the Magistrate Judge erred by finding that the failure to intervene claims continue simply because the excessive force claims against Dunn continue.  However, defendants have misconstrued those findings.

---

[4] The court notes that even if plaintiff suffered only a de minimus injury, that would not necessarily require the dismissal of plaintiff's claim.  Plaintiff must have more than a de minimis injury to recover for mental or emotional injury, but may still recover actual or nominal damages. See Williams v. Brown, 347 Fed.Appx. 429, 436 (11th Cir. 2009); Boxer X v. Harris, 437 F.3d 1107, 1111 n. 3 (11th Cir. 2006); Nix v. Carter, 2013 WL 432566, *2 (M.D. Ga. Feb. 1, 2013).

The Magistrate Judge correctly found that the facts before the court support the claim for excessive force against Dunn. This was a preliminary finding, without which the failure to intervene claims against Ashworth, Pate, and Marsh would not have continued. The Magistrate Judge cited cases where excessive force claims and related failure to intervene claims both survived summary judgment, but as mentioned above, the Magistrate Judge based his decision on the fact that there was evidence that defendants observed the excessive force and had the opportunity and means to stop the excessive force.

Defendants next contend that defendants did not see and were not in a position to intervene because Ashworth was temporarily blinded and incapacitated due to exposure to the pepper spray, Pate was to the left of plaintiff and was focused on the handcuffs and Marsh was holding plaintiff's legs to keep him from kicking any officers. Additionally, they argue that plaintiff cannot even identify where any of the defendants were located because he was lying with his face down and his head facing to the left the whole time. Defendants further argue that plaintiff has failed to dispute the fact that the defendants did not witness the excessive force. However, plaintiff argued in his brief, that two witnesses testified that Dunn kicked Johnson multiple times and that "[f]our of the officers were on top of Johnson and all were in a position to prevent the abuse." (Doc. 199, p. 17). As such, the undersigned finds that plaintiff has disputed that defendants did not witness Dunn's alleged excessive force. The defendants impliedly saw the abuse if they were "in a position" to prevent the abuse.

Defendants further argue that the Magistrate Judge impermissibly assessed the credibility of the defendants because he found defendants' claim that they did not see the excessive force to be "incredibly convenient" and "incredible." However, the Magistrate Judge was merely commenting that there was strong circumstantial evidence to the contrary. He did not weigh the evidence, but viewed the evidence in the light most favorable to plaintiff and concluded that defendants' personal accounts of what they saw were refuted by other evidence. There is evidence that the excessive force was visible to others in the area, it occurred multiple times, defendants were very close to the excessive force and were allegedly in a position to prevent the abuse. The facts, when construed in the light most favorable to plaintiff, are sufficient to raise a question of fact regarding whether defendants could have prevented the abuse.

**3) Failure to Intervene Claims Against Pate and Marsh in Connection with Ashworth's Alleged Excessive Force**

Pate and Marsh renew their motion for summary judgment as to the claim that they were deliberately indifferent with regards to the pepper spray incident, arguing that excessive force is a prerequisite to finding that an officer was deliberately indifferent for failing to intervene. (Doc. 208, p. 3). Because the undersigned found, above, that there is sufficient evidence for a jury to find that Ashworth used excessive force, the court also finds that defendants' argument fails. The prerequisite has been met.

**4) Assault and Battery Claims against Ashworth**

The Magistrate Judge found that there is sufficient evidence to establish that Ashworth's actions - twice spraying plaintiff with Sabre Red - constitutes an assault and battery. (Doc. 203, pp. 37-38). Ashworth claims that under <u>Walker v City of Huntsville</u>, 62 So.3d 474 (Ala. 2010), he is entitled to summary judgment because the claim is identical to the federal excessive force claim for which Ashworth argues summary judgment should also be granted. Ashworth asserts that as an ADOC correctional officer he is deemed the same as a law enforcement officer and thus, can only be liable in tort if he uses more force than necessary in discharging his duties. However, plaintiff's claim against Ashworth for assault and battery cannot be extinguished on that basis because of this court's finding, above, that there is sufficient evidence for plaintiff's excessive force claim against Ashworth to continue.

### 5) Negligent Failure to Follow ADOC Regulations

Defendants contend that the Magistrate Judge erred in addressing the merits of plaintiff's claim for negligent failure to follow ADOC regulations because plaintiff abandoned this claim. Defendants assert that plaintiff's response to their motion for summary judgment is devoid of any argument as it relates to this claim. However, as plaintiff points out, the claim was included in his second amended complaint and plaintiff detailed how he believes defendants violated regulations 327 and 312 in his brief in opposition to summary judgment. (Doc. 199, pp. 34-38). Accordingly, the court finds no basis for finding that plaintiff has abandoned this claim.

### 6) Wantonness Claims against Ashworth, Pate and Marsh

The Magistrate Judge recommended that summary judgment be granted as to the wantonness claim against Ashworth, Pate and Marsh for willfully and wantonly failing to prevent Dunn from kicking and punching Plaintiff (Doc. 203, p. 46, n. 37). Defendants contends that any claims for willful or wanton conduct that were not specifically addressed in the Report and Recommendation cannot survive because plaintiff has abandoned the claim or the facts fail to meet even the lower standards discussed with regard to plaintiff's other claims.

In defendants' motion for summary judgment they asserted that summary judgment should be granted as to the willful and wanton claims based on their previous arguments that they had not acted unconstitutionally or even negligently. (Doc. 189, p. 46). Defendants then asserted that Ashworth had no real knowledge of danger at the hands of Dunn relating to any past incidents. Defendants also argued that the claim against Ashworth must fail as it relates to the use of pepper spray because pepper spray does not cause permanent physical injury and thus, Ashworth was aware of no danger to plaintiff. Defendants relied on their previous arguments that the pepper spray was not used for the purpose of inflicting injury. As to the other defendants who were present, they asserted that they had no knowledge that Dunn would kick plaintiff or of any danger posed by Dunn. Defendants further argued that the other defendants are entitled to state-agent immunity.

A review of plaintiff's brief in opposition to summary judgment reveals that plaintiff did oppose summary judgment with regard to his claims for willful and wanton misconduct. Much of defendants' argument was based on their previous

arguments with regard to plaintiff's other claims. Plaintiff fully opposed summary judgment as to all of his other claims. Plaintiff also specifically addressed the propriety of granting summary judgment on his claims for willful and wanton misconduct. After a brief recitation of applicable law, the plaintiff asserted the following:

> Ashworth was wanton in using force that exceeded what was justified under the circumstances. All the Defendants were wanton in failing to intervene when Ashworth and Dunn excessively sprayed Johnson and when Dunn assaulted Johnson. The Defendants were unlawfully willful and wanton when they held Johnson down for Dunn and facilitated his assault on Johnson. Ashworth and English were wanton in failing to report Dunn's past acts of violence towards inmates pursuant to the ADOC regulations. All the Defendants were wanton attempting to conceal their actions. As a direct and proximate result of Defendants' wrongful acts and omissions to act, Johnson was injured. There is sufficient evidence to raise a reasonable inference that the Defendants made a concerted effort to harm Mr. Johnson. The suspect nature of the "order", the presence of only white officers on the hall, the uses of force and the attempted cover-up all provide ample evidence to allow a reasonable jury to find the Defendants had a design or purpose to accomplish the assault on Johnson. There being genuine issues of material fact with regard to Johnson's claim for willful and wanton conduct, summary judgment must be denied.

(Doc. 199 pp. 40-41). After reviewing the above, the court finds that plaintiff opposed all of the bases raised by defendants as to summary judgment of plaintiffs' willful and wanton claims. Accordingly, the undersigned finds that plaintiff did not abandon any of his claims for willful and wanton misconduct.

However, the court finds that the Report and Recommendation does not clearly state which willful and wanton claims should remain. The complaint asserts that defendants willfully and wantonly (a) used force that exceeded what was

justified under the circumstances, (b) applied excessive force that was unreasonable and unnecessary, (c) continued physical abuse while the plaintiff begged defendants to quit hitting him, (d) failed to prevent Dunn from kicking and punching plaintiff, (e) failed to monitor, supervise, and report Dunn's past acts of violence pursuant to standard procedure, rules and regulations, and (f) failed to report or recommend to their superiors that Dunn be terminated. (Doc. 155, pp. 11-12). The Magistrate Judge recommended that summary judgment be granted as to allegation (d) above. This court agrees, but further finds that summary judgment is also due to be granted on plaintiff's willful and wanton claims to the extent summary judgment is warranted on the related claims that use lesser standards. The Magistrate Judge found that Pate and Marsh are entitled to summary judgment on plaintiff's claim for failure to follow ADOC regulations and there has been no showing that any force used by Pate and Marsh was excessive. As such, the court finds that summary judgment is due to be granted as to all of the claims for willful and wanton conduct to the extent they were alleged against Pate and Marsh.

As for Ashworth, the Magistrate Judge found only that the claims for negligent retention and supervision against Ashworth were due to be granted and the undersigned has agreed with the Magistrate's findings and conclusions in that regard. As such, the court finds that the basis put forth by defendants – that the facts fail to meet even the lower standards discussed with regard to plaintiff's other claims – does not warrant summary judgment on the willful and wanton claims against Ashworth.

## CONCLUSION

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a <u>de novo</u> determination of those portions of the report and recommendation to which objection is made, the undersigned hereby **ADOPTS** the Report and Recommendation of the Magistrate Judge and as a clarification of or addition to the Report and Recommendation **FURTHER ORDERS** that, for the reasons stated above, summary judgment is granted in favor of James Pate and Roger Marsh as to plaintiff's claims for willful and wanton misconduct. Accordingly, it is **ORDERED** that summary judgment is **GRANTED** in part and **DENIED** in part as follows:

1. Summary judgment is **GRANTED** in favor of **James English** on all claims asserted against him.

2. Summary Judgment is **GRANTED** in favor of **James Pate** and **Roger Marsh** on the following claims:

   **a.** plaintiff's claims for assault and battery,

   **b**. plaintiff's claims for negligent failure to follow ADOC procedure, and

   **c.** plaintiff's claims for willful and wanton misconduct.

3. Summary Judgment is **GRANTED** in favor of **Penton Ashworth** on the following claims:

   **a.** plaintiff's claim for negligent failure to follow ADOC procedure

relating to Dunn's alleged use of excessive force,

**b.** plaintiff's claim that Ashworth willfully and wantonly failed to

prevent Dunn from kicking and punching plaintiff,

**c.** plaintiff's claim for negligent retention and supervision.[5]

**4.** Summary Judgment is **DENIED** as to all other claims not listed above.

**DONE and ORDERED** this 27th day of March, 2014.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff's claims for negligent retention and supervision are asserted only against Ashworth and English.  Thus, summary judgment is granted as to all claims asserted in Count V.